Argued November 14, affirmed December 18, 1928.

## I. KATZMAN *v.* CELIA KATZMAN.

(272 Pac. 667.)

For appellant there was a brief and oral argument by *Mr. David Robinson.*

For respondent there was a brief and oral arguments by *Mr. Dan E. Powers* and *Mr. F. E. Swope.*

ROSSMAN, J.—We have carefully read the evidence in this suit and have given much consideration to what we believe are the facts. We are satisfied that the marriage was an unfortunate one, that its failure was foreshadowed when the tryst was effected. The unhappiness and discord which resulted was the natural result of their ill-advised union. Since March of 1921, the parties have not lived together, and we believe that there is no foundation for any expectation that their conjugal relations will be resumed. This conviction is based not only upon the many unhappy occurrences which developed almost at the outset of their marriage and grew in number as time went on, but also upon the following facts: a promised marriage settlement of $2,000 constituted, apparently, as much inducement for the plaintiff to marry the defendant as the bride who awaited him at the matrimonial altar. In 1909, when the marriage was performed, the plaintiff was nineteen years of age; the defendant was at least a year, and perhaps seven or eight years older. The plaintiff is illiterate. When the promise of $2,000 failed to materialize into yellow gold, and as the plaintiff's expectations in that regard turned into disappointment, his affection for the defendant was not increased. The foregoing circumstances, unfavorable to the success of the matrimonial venture, we believe constitute the real causes that brought this suit to the divorce court.

We come now to those immediate causes concerning which the parties have testified at greater length. The plaintiff's occupation was as a tailor and fitter in large establishments; this necessitated his employment in places where there were many women

employees. He testified that soon after their marriage the defendant exhibited a very jealous nature, that she visited almost daily his places of employment, and made accusations in which she accused him of undue familiarity with the women employees. He added that these charges of improper conduct, communicated by his wife to his employers and fellow-employees, created conditions which rendered it impossible for him to retain employment with any employer for anything but short periods of time. Besides stating that this humiliated him and made him the laughing stock of the shop, he also testified to unhappy conditions in his home which we shall not, however, review. Upon the other hand, the defendant testified that the plaintiff stayed out at nights, and she accused him of a lack of proper affection. The charges of the plaintiff that the defendant was unduly jealous, interfered in his employment, and made unwarranted charges of improper conduct are corroborated somewhat by two of his cousins; they are not denied by the defendant, unless we may construe as denials such of her general statements as, that she was a kind and dutiful wife. Her failure to make denial may be due to the fact that her testimony was presented by a deposition which had been prepared before the plaintiff testified; nevertheless these serious charges made by him remain uncontradicted. Adding somewhat to the strength of plaintiff's testimony is the fact that the trial judge, who saw the plaintiff and his witnesses, found in his favor. Due to these circumstances we are willing to accept plaintiff's account as the most available explication of the cause of the discord in his household, although we are convinced

that the ultimate cause was the facts to which we previously adverted.

Until March of 1921, the plaintiff had properly provided for his family. At that time he left his home and from then until approximately April, 1925, his contributions for the support of his wife and two children were irregular and often inadequate. Welfare organizations and neighbors supplied the items the plaintiff failed to provide. Since March of 1925, when the plaintiff established his residence in Portland, he has contributed regularly for the support of his family, and if we understand the evidence properly, he has made additional payments to make reparation for his past delinquencies. The amount of his monthly payments, since his arrival in Portland, is not complained of. His failure to discharge his whole duty to his family for the period of March, 1921, to April, 1925, may have been due in part to the defendant's interference with his employment. He is described as skilled in his trade, and "a splendid worker"; yet during his ten or eleven years' residence in Chicago he lost positions so rapidly that in that period of time he had worked for more than a score of employers. While we are not satisfied that the plaintiff's contributions to his family have been those of a model provider, yet in view of the defendant's interference with his employment, and the fact that he is illiterate, we believe that his deficiencies are in a measure explained.

Being convinced that the conjugal relations will never be resumed, and that the defendant's conduct has actually offended against the matrimonial status in a substantial manner, we agree with the Circuit Court that the parties should be separated by a de-

cree of divorce. The decree of the lower court will therefore be affirmed. Costs in this court to neither party. AFFIRMED.

RAND, C. J., and COSHOW and McBRIDE, JJ., concur.